# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### KRAKE v. ALEXANDER.

#### June 20th, 1889.

GAMBLING CONTRACTS—*Notice—Loans to pay gambling debts—Case at bar.*— There was judgment against surety on note for money borrowed to be used as margins on grain and pork options. Surety obtained money to pay judgment, securing lender by trust deed on land. Lender was not shown to have had any connection with, or knowledge of, the options. On creditors' bill to take an account of liens on surety's land: *held*, the trust deed to lender was not void as against the other creditors, being based on a gambling consideration.

Heard at Richmond. Decided at Wytheville.

Appeal from decree of circuit court of Culpeper county, rendered June 4, 1888, in a creditors' suit instituted by Mifflin County National Bank, complainant, against J. P. Alexander and others, defendants. The decree being unfavorable to J. H. Krake, one of the lien creditors, he appealed. Opinion states the case.

*G. D. Gray*, and *J. F. Rixey*, for the appellants.

*G. A. Mushback*, and *W. L. Jeffrees*, for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The bill was filed on the 11th of June, 1887, for the purpose of having audited the liens, by deeds, judgments, &c., on the

lands of the said J. P. Alexander, and of subjecting the said·
lands to sale for the payment of the said liens, in the order of
their priorities; and on the 14th of September, 1887, the court
decreed that an account be taken and reported by a master
commissioner of the said lands, and of the liens thereon, in
their order; which account was accordingly taken and reported
March 3d, 1888. On the 23d of March, 1888, the cause was
heard on the papers formerly read and on the said commis-
sioner's report, to which there was then no exception; and the
court, without confirming the said report, decreed a sale of the
lands of the said defendant, J. P. Alexander. On the 30th of
May, 1888, the said lands were sold, for an amount not aggre-
gating quite one-half of the total of liens reported; which sale
was reported to the said circuit court, and was confirmed by
decree at June term, 1888; and the commissioners of sale were
directed to receive the entire purchase money from the pur-
chaser, who was desirous of paying it all then.

Among the liens reported by the master commissioner as
forming the fourth class, were *two* bonds or notes of J. P. Alex-
ander, aggregating $1,900 00 principal, with interest at 8 per
cent. from 16th October, 1885, payable to J. H. Krake (appel-
lant here), amounting then to $2,254 67. These two bonds or
notes were secured by a deed of trust dated 16th of October,
1885, duly executed and acknowledged by said J. P. Alexander
and wife, conveying the lands of the said J. P. Alexander to
Frederick J. Flamm, trustee, in trust to secure to J. H. Krake
the payment of $1,900 00, as evidenced by a note for $900 00
due four months after date, and another note for $1,000 00, due
eight months after date, with interest at 8 per cent., of even
date with the deed of trust, and payable at the Bank of Com-
merce, in St. Louis, Missouri, to the order of J. H. Krake.

At the said June term, 1888, of the said circuit court, G. H.
Robinson & Sons, creditors of J. P. Alexander, of the tenth
class, filed an exception to the said report of the master com-
missioner, as follows: "Because the fourth lien, reported by

commissioner—viz., that of J. H. Krake, is, as shown by the testimony in the cause, based on a gambling consideration, and is a gambling debt and void under the law as against the debt due exceptant, and is not a lien upon the land." At the said term, June 4th, 1888, the cause was heard on the former papers, the report of the sale showing the collection of the entire purchase money for the land sold, and on the said exception filed by G. H. Robinson & Sons; and the court, by decree of June 4th, 1888, sustained the said exception of G. H. Robinson & Sons to the debt reported in the fourth class in favor of J. H. Krake for $2,254 57; and it also ordered the commissioner of sale to pay certain of the liens reported out of the purchase money in hand.

From this decree, so far as it sustains the said exception of G. H. Robinson & Sons to the report of the said lien in favor of said J. H. Krake, the said Krake has taken this appeal. We are of opinion that the circuit court erred in sustaining the said exception. The issue is solely between appellant (Krake) and the exceptants, for themselves and the creditors junior to the fourth class.

The question before this court is, whether the lien reported in favor of Krake is shown by the testimony to have been based on a gambling consideration, and as such void under the law; and, further, if such were the fact, whether Krake had notice of it? The only testimony or other evidence in the cause on this matter, is the depositions of J. P. Alexander and Ard. Alexander, and the deed of trust aforesaid made to secure Krake.

The depositions of J. P. Alexander, defendant, and of Ard. Alexander, his brother, were taken on behalf of the creditors.

J. P. Alexander testifies "that a man named J. S. Phelps borrowed $2,000. J. P. Alexander and Ard. Alexander were on his note, payable to Imbs & Co. Phelps failed, and Imbs & Co. endorsed the note to Hartman, who sued and obtained judgment against us. My wife and I were in St. Louis about two

years ago last fall, and we gave notes—one for $900 and the other for $1,000—in satisfaction of the judgment, and these are the two notes or bonds reported by the commissioner." He further testifies that *Phelps* used the notes given by him to Imbs & Co., on which he, J. P. Alexander, and his brother were sureties, as margins on grain and pork options; that Imbs & Co. were commission merchants; that the note of Phelps, on which he and his brother were sureties, was endorsed by Imbs & Co. to Hartman, who obtained judgment on it; and that to reimburse Imbs & Co. the said notes for $900 and $1,000 were given; and that Krake had married a relative of Imbs.

Ard. Alexander testifies to the same, and says, also, that "in the spring of 1883 I received a letter from J. S. Phelps enclosing a note in favor of J. F. Imbs & Co. for $2,000, payable in 90 days, with 8 per cent. interest. Phelps stated in his letter that he wished to use it as margins on pork and wheat options with Imbs & Co., and asked me to go his security together with my brother, J. P. Alexander. I and my brother signed the note, and Phelps used it with Imbs & Co. I saw Phelps take it into the office of Imbs & Co. and hand Imbs the note, who told him he wanted the money and not the note. Whereupon Phelps told him to endorse the note and he would get the money, which Imbs did, and Phelps got the money from Hartman and gave it to Imbs, which also I saw. After maturity of the note, Hartman sued Phelps, my brother, and myself, and obtained judgment against us. Phelps was then insolvent, and Hartman required Imbs to pay the judgment, which he did, and took an assignment of the judgment. I was informed that he afterwards required J. P. Alexander to pay or secure the judgment to be paid to him. Phelps bought 20,000 bushels October wheat and 2,000 barrels of pork, I think, for September, and the money obtained on the note was put up as a margin for the speculation."

This is all the testimony in the cause.

There is nothing in these depositions to show any knowledge

by Krake of the transaction of Phelps and Imbs & Co., or of Alexander's connection with it, be that transaction what it may. The record shows a plain and ordinary business transaction between J. P. Alexander and Krake. Alexander wanted $1,900, and he borrowed it from Krake, giving his bonds or notes, secured by a deed of trust. Krake was no party to the transaction of 1883, and, so far as the record shows, he knew nothing about it. He had married a relative of Imbs, but that does not necessarily make him cognizant of the business transactions of Imbs & Co. He (no more than any other lender of money) was not bound to inquire of his borrower what he wanted the money for, nor is he to be affected by any use to which Alexander, his borrower, chose to make of the money—which became Alexander's property by the loan. There is nothing in the record to impeach the transaction between Alexander and Krake, nor to take it out of the category of the like transactions—fair, legitimate, and usual—had in the every day business of men. It would be hazardous and wrong to allow mere conjecture, or suspicious theories, unsupported by fact or evidence, to impair the validity of deeds of trust where the creditor has lent his money on the faith of security such as that in this case, and still greater would be the danger and injury of holding the lender creditor responsible for the use which the borrower might make of the loan. Whatever the character of the original transaction may have been, Krake was no party to it. His loan to Alexander was not made *at the time* and for use in the proposed intent or speculation, for that was all passed and gone by. Alexander was only a security for Phelps, and if he could have resisted the demand on him, yet the law does not compel him to plead the gambling act any more than it would compel him to plead the statute of limitations; nor would it be more unlawful to lend money to a man to be used in paying an old obligation, which he could resist under sec. 2836 of Code 1887, than it would be to lend him money to pay an old debt barred by time.

Whether speculations or transactions in options and margins be unlawful in Virginia is a question which this court is not called on to consider in this cause. The evidence of the two Alexanders, beside being loose and vague, and much of it hearsay and unproduced letters, falls far short of proving the material details of the transaction, intended or actually made, as to terms, delivery, time, &c., to justify this court in deciding it to be in violation of the gambling act or of the statute of frauds, even as between the actual parties to it; still less can this court make proof, so deficient, the basis for avoiding the contract, evidenced by the bonds and deed of trust, between Alexander and Krake.

The circuit court erred in sustaining the exception of Robinson & Sons to the report of the master commissioner in favor of Krake's lien in the fourth class; and the decree, so far as complained of, must be reversed and annulled, and the cause must be remanded to the circuit court for a decree to pay the lien of the appellant Krake, as reported in the fourth class, out of the purchase money for the land sold in the hands of the court, and for costs in favor of appellant.

DECREE REVERSED.